IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.  CRIMINAL ACTION NO. 2:13-cr-00073

RENARDO DARNELL OWENS

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendant Rendardo Darnell Owen's Motion for Compassionate Release. [ECF No. 56]. The court in deciding such motions will consider the following: whether the defendant has exhausted his or her administrative remedies, has demonstrated "extraordinary and compelling reasons," is not a danger to the safety of others, and the § 3553(a) factors. In deciding what constitutes "extraordinary and compelling reasons" for release by reason of COVID-19, the defendant must demonstrate that he or she has a medical condition listed by the Centers for Disease Control and Prevention as causing an increased risk of severe illness from COVID-19 and that he or she is at a facility which cannot effectively prevent the spread of the virus.

### I. Background

On November 6, 2013, Judge Johnston sentenced Mr. Owens to 130 months of imprisonment followed by 3 years of supervised release after Mr. Owens pleaded

guilty to conspiring to distribute cocaine base. [ECF No. 36]. After the United States Sentencing Guidelines were revised in 2014, Judge Johnston reduced Mr. Owens's sentence from 130 months of imprisonment to 110 months of imprisonment. [ECF No. 47]. Mr. Owens's case was reassigned to me on April 4, 2018. [ECF No. 53].

Mr. Owens is currently imprisoned at FCI Allenwood-Medium. He currently suffers from and is being treated for hypertension and high blood pressure. He is obese, has an abdominal hernia, and does not have his left kidney. [ECF No. 56, at 3]. FCI Allenwood-Medium houses 1,024 total prisoners in White Deer, Pennsylvania. *FCI Allenwood-Medium*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/alm/ (last visited Sept. 12, 2020). As of September 12, 2020, there are no active cases among prisoners and three active cases of COVID-19 among Allenwood-Medium staff. *See COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Sept. 12, 2020).

## II. Discussion

The First Step Act "embodies Congress's intent to reduce the Bureau of Prison's authority over compassionate release petitions and authorizes the district courts to exercise their independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Galloway*, No. CR RDB-10-0775, 2020 WL 2571172, at *3 (D. Md. May 21, 2020) (internal citations removed); *see also United States v. Stephenson*, No. 3:05-CR-00511, 2020 WL 2566760, at *5 (S.D. Iowa May 21, 2020) ("Unqualified deference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's

Case 2:13-cr-00073 Document 57 Filed 09/16/20 Page 3 of 10 PageID #: 231

role.").

For me to reduce Mr. Owens's sentence under compassionate release, I must find that Mr. Owens has exhausted his administrative remedies, has demonstrated "extraordinary and compelling reasons," is not a danger to the safety of others, and find that his release is consistent with § 3553(a) factors. *See e.g., United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020); U.S.S.G. § 1B1.13 (2018). As I will explain, to find "extraordinary and compelling reasons" exist by reason of COVID-19, Mr. Owens must demonstrate that he has a medical condition listed by the Centers for Disease Control and Prevention ("CDC") as causing an increased risk of severe illness from COVID-19 and that he is at a facility which cannot effectively prevent the spread of the virus.

### a) Exhaustion of Administrative Remedies and Section 3582(c)(1)(A)

The First Step Act empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C § 3582(c)(1)(A)(i). But before they make such requests, defendants must ask BOP to do so on their behalf and then wait 30 days. *See* § 3582(c)(1)(A). Upon such a motion from BOP or from a defendant (after BOP denies the request or thirty days have elapsed since the request was filed), a court "may reduce the term of imprisonment…." 18 U.S.C. § 3582(c)(1)(A)(i).

On August 9, 2020 Mr. Owens filed a request for Compassionate Release with the warden at FCI Allenwood-Medium based on his medical conditions and the COVID-19 pandemic. [ECF No. 56, at 2]. This request was denied on August 17, 2020.

3

[ECF No. 56, at 17–18]. On September 1, 2020, Mr. Owens filed this Motion for compassionate release with the Clerk. [ECF No. 56]. While Mr. Owens did not wait the requisite 30 days before filing his Motion with the Clerk, it has certainly been 30 days at this point. Therefore, because Mr. Owens filed a request for compassionate release with the warden and 30 days have passed, I find that he has exhausted his administrative remedies.

### b) Extraordinary and Compelling Reasons

Once an inmate has satisfied administrative exhaustion, courts may reduce their sentences upon a finding of "extraordinary and compelling reasons." *See* 18 U.S.C. § 3582(c)(1)(A).

There are "disagreements [among district courts] about the precise definition of 'extraordinary and compelling reasons' justifying compassionate release."[1] *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717, at *3 (D.N.M. May 18, 2020). But many courts have found "extraordinary and compelling" reasons "supporting release on the basis of a combination of dire prison conditions and underlying health conditions that increase the likelihood of severe illness from

---

[1] The specific extraordinary and compelling reasons listed in the Sentencing Guidelines for BOP to consider include i) the defendant is suffering from a terminal or serious medical condition; ii) age of defendant; iii) family circumstances of defendant; and iv) "other reasons." U.S.S.G. § 1B1.13; *United States v. Bass*, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *3–4 (N.D.N.Y. May 27, 2020). "Following the passage of the First Step Act, courts may independently determine whether such 'other reasons' are present in a given case, without deference to the determination made by the BOP." *United States of America v. Thaher,* No. 17 CR. 302-3 (KPF), 2020 WL 3051334, at *4 (S.D.N.Y. June 8, 2020).

COVID-19."[2] *See e.g., Bass*, 2020 WL 2831851, at \*7 (citing *e.g., Rodriguez*, 2020 WL 1627331, at \*9 (finding an "extraordinary and compelling reason" on the basis of the inmate's diabetes, high blood pressure, and liver abnormalities, the outbreak at FCI Elkton, and the short period remaining on his sentence); *United States v. Sawicz*, No. 08-CR-287 (ARR), 2020 WL 1815851, at \*2 (E.D.N.Y. Apr. 10, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and conditions at FCI Danbury). I previously granted compassionate release to a defendant who was immunocompromised—suffering from a liver disease, Hepatitis C. *See United States v. White*, No. 2:17-CR-00198-4, 2020 WL 3244122, at \*6 (S.D. W. Va. June 12, 2020); s*ee also Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 12, 2020) (listing "immunocompromised state" as an underlying medical condition causing an "increased risk for severe illness from COVID-19").

In addition, many courts rely upon CDC guidance for whether a medical condition constitutes an "extraordinary and compelling" reason for release. *See e.g.,*

---

[2] "Section 1B1.13 of the United States Sentencing Guidelines contains the only policy statement issued by the Sentencing Commission pertaining to compassionate release," which has not been updated since the passage of the First Step Act. *See Bass*, 2020 WL 2831851, at \*3; U.S.S.G. § 1B1.13.2 Thus, courts have taken this to mean that "there does not currently exist, for purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'" *See e.g., United States v. Redd*, No. 1:97-cr-00006-AJT, 2020 WL 1248493, at \*6 (E.D. Va. Mar. 16, 2020); *United States v. Brant*, No. 218CR20155TGBMKM1, 2020 WL 2850034, at \*4 (E.D. Mich. June 2, 2020); *United States v. Brooks*, No. 07-CR-20047-JES-DGB, 2020 WL 2509107, at \*3 (C.D. Ill. May 15, 2020).

*United States v. Salvagno*, No. 5:02-CR-51 (LEK), 2020 WL 3410601, at *4 (N.D.N.Y. Apr. 23, 2020), reconsideration denied (June 22, 2020) ("The Centers for Disease Control and Prevention has advised that people with hypertension face an increased risk of severe illness from COVID-19."); *United States v. Nygren*, No. 1:16-CR-00106-JAW, 2020 WL 4208926, at *12 (D. Me. July 22, 2020) ("Based on the medical records in this case and the CDC guidance . . ."); *United States v. Bell*, No. 18-CR-60115-BB-4, 2020 WL 4217724, at *4 (S.D. Fla. July 23, 2020) ("CDC guidance indicates that individuals with the following health conditions are at a higher risk of contracting severe illness due to COVID-19 . . ."). And many courts reject compassionate release petitions when the defendant does not suffer from any conditions recognized by CDC as causing an increased risk of severe illness from COVID-19. *See e.g.*, *United States v. Adeyemi*, No. CR 06-124, 2020 WL 3642478, at *19 (E.D. Pa. July 6, 2020) ("Mr. Adeyemi's asthma does not currently fit the Centers for Disease Control and Prevention's high-risk category."); *United States v. Mollica*, No. 2:14-CR-329-KOB, 2020 WL 2811504, at *3 (N.D. Ala. May 29, 2020) ("Ms. Mollica is under 65 and the CDC has not listed the underlying conditions from which she suffers as creating particular risk for COVID-19."); *United States v. Arroyo*, No. 2:19-CR-54-1-TLS-JPK, 2020 WL 3118787, at *4 (N.D. Ind. June 12, 2020) ("High cholesterol is not listed on the CDC website as a risk factor related to COVID-19…"); *United States v. Cosby*, No. 18CR4474-JAH, 2020 WL 3840567, at *4 (S.D. Cal. July 7, 2020) ("CDC has not listed epileptic seizures as a condition that places individuals at a higher risk of severe illness."); *United States v. Frazer*, No. CR 19-110, 2020 WL 2404893, at *2

(E.D. Pa. May 12, 2020) ("Sleep apnea is not listed by the CDC as a serious underlying medical condition that could increase a person's risk for severe illness from COVID-19.").

I join other courts in holding that I cannot find "extraordinary and compelling" reasons exist to grant release because of COVID-19 unless the inmate has a condition that makes him or her more at risk for developing a serious illness from COVID-19 *and* the facility where the inmate is housed has conditions such that its inmates are at a high risk of contracting COVID-19. *See United States v. Raia*, 954 F.3d 594, 594 (3d Cir. 2020) ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release..."); *United States v. Penaloza*, No. 19-238, 2020 WL 1555064, at *2 (D. Md. Apr. 1, 2020) ("[T]he mere presence of the virus, even in the detention setting, does not translate to the release of a person accused.").

In deciding which conditions result in an inmate being a higher risk for COVID-19, I will defer to CDC's list of medical conditions causing an increased risk of severe illness from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 12, 2020). Using CDC guidance will allow for more predictable standards in deciding which defendants have "extraordinary and compelling" reasons justifying release.

If an inmate can demonstrate that he or she has a condition identified by CDC, next, the defendant must show that his or her prison conditions are such that BOP

cannot effectively prevent the spread of COVID-19. Factors include but are not limited to the steps BOP has taken to stop the spread of COVID-19 in that particular prison and steps to follow CDC guidance, the ability of inmates to socially distance, the amount of hygiene products and face masks provided to inmates, and the number of COVID-19 cases in that prison.

I will note that Attorney General William Barr has twice issued memoranda directing BOP to prioritize the use of home confinement for vulnerable inmates. *See Memorandum for Director of BOP*, https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf (last visited Sept. 13, 2020) and https://www.justice.gov/file/1262731/download (last visited Sept. 13, 2020). Yet, by all accounts, BOP has resisted calls to release vulnerable inmates to home confinement. Indeed, other district courts have noted their awareness "of the growing evidence of the BOP's chronic mismanagement of its vulnerable population during the COVID-19 pandemic." *Woodard v. United States*, No. 2:12-CR-105, 2020 WL 3528413, at *3 (E.D. Va. June 26, 2020); *see also Wilson v. Williams*, 4:20-cv-00794, 2020 WL 2542131, at *1–2 (N.D. Ohio May 19, 2020) (documenting the "unacceptable" percentage of positive tests at FCI Elkton and BOP's "ineffective[ness] ... at stopping the spread"). "Even in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others." *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020)

8

(the likelihood of contracting the virus is greater in prison than if a defendant were able to fully self-isolated at home); *see also See United States v. Stephens*, —— F.Supp.3d ——, ——, 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020) (discussing the heightened risk presented by a COVID-19 outbreak in a jail or prison versus the community at large). Thus, when looking at whether an inmate is at a prison with a high risk of contracting COVID-19, it is also imperative to recognize the context and failures of BOP to stop the spread of COVID-19 in prisons.

Mr. Owens has alleged several health conditions. But as I have noted my reliance on the CDC's designation of health conditions that place people at higher risk of serious illness from COVID-19, only two of those conditions are relevant here. Mr. Owens contends that he is obese and that he is hypertensive. Both of these conditions are included on CDC's list of underlying health conditions that put individuals at an increased risk for severe illness from COVID-19. According to CDC, obese people, those with a body mass index of thirty or higher, are at an increased risk of severe illness from COVID-19. In addition to this, people who are hypertensive might be at an increased risk for severe illness from COVID-19.

Because Mr. Owens has alleged health conditions that, according to CDC, put him at a higher risk for severe illness from COVID-19, I turn to whether Mr. Owens has alleged conditions at FCI Allenwood-Medium that put him at a higher risk for contracting COVID-19. Mr. Owens has not done this. Mr. Owens describes at length how COVID-19 is harder to control in prison generally. He refers to the Barr Memoranda and CDC statements about the difficulty of controlling COVID-19 in

prisons. [ECF No. 56, at 6–9]. But he does not allege any specific conditions at FCI Allenwood-Medium that put him at an increased risk for contracting COVID-19 when compared to other prisoners at FCI Allenwood-Medium or when compared to prisoners at other BOP Prisons. Mr. Owens offers that COVID-19 is hard to contain and manage in a prison setting, and while this may be generally true, the First Step Act calls for an assessment of Mr. Owens's conditions, not an assessment of prisons generally. While Mr. Owens's fears that he may contract COVID-19 are understandable, fears alone do not rise to the level of extraordinary and compelling reasons.

III. **Conclusion**

For the foregoing reasons, Defendant's motion for compassionate release [ECF No. 56] is **DENIED without prejudice.** The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

        ENTER:    September 16, 2020

        JOSEPH R. GOODWIN
        UNITED STATES DISTRICT JUDGE