IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.                                CRIMINAL ACTION NO. 2:13-cr-00073

RENARDO DARNELL OWENS

MEMORANDUM OPINION AND ORDER

      Pending before the court is Defendant Renardo Darnell Owen's Motion for Compassionate Release. [ECF Nos. 59, 61]. I will, in deciding such motions, consider the following: whether the defendant has exhausted his or her administrative remedies, has demonstrated "extraordinary and compelling reasons," is not a danger to the safety of others, and the § 3553(a) factors. To satisfy the requirement for "extraordinary and compelling reasons" for release by reason of COVID-19, the defendant must demonstrate that he or she has a medical condition listed by the Centers for Disease Control and Prevention as causing an increased risk of severe illness from COVID-19 and that he or she is at a facility which cannot effectively prevent the spread of the virus.

      This is not Mr. Owens's first request for compassionate release. Mr. Owens initially requested compassionate release due to the COVID-19 pandemic on September 1, 2020. [ECF No. 56]. I denied that first Motion without prejudice for, inter alia, a failure to allege extraordinary and compelling reasons justifying his

compassionate release. [ECF No. 57]. Since that denial, Mr. Owens has supplemented his original filings. On October 5, 2020, Mr. Owens filed a Motion requesting that counsel be appointed to assist him in filing for compassionate release. [ECF No. 58]. On October 6, 2020, he filed an Emergency Motion for Reconsideration asking me to reconsider my denial of his first Motion for Compassionate Release. [ECF No. 59]. And, on October 13, 2020, he filed a second Motion for Compassionate Release. [ECF No. 61]. As Mr. Owens is acting pro-se, I am interpreting these filings liberally and treating them collectively as a renewed Motion for Compassionate Release filed on October 6, 2020. [ECF Nos. 59, 61]. I directed the Government to respond to Mr. Owens's Motion on October 7, 2020. [ECF No. 60]. The government has responded, [ECF No. 62], and this issue is ripe for decision.

## I. Background

On November 6, 2013, after Mr. Owens pleaded guilty to conspiring to distribute cocaine base, Judge Johnston sentenced him to 130 months of imprisonment followed by 3 years of supervised release. [ECF No. 36]. After the United States Sentencing Guidelines were revised in 2014, Judge Johnston reduced Mr. Owens's sentence from 130 months of imprisonment to 110 months of imprisonment. [ECF No. 47]. Mr. Owens's case was reassigned to me on April 4, 2018. [ECF No. 53]. At this point, Mr. Owens has served over 80% of his sentence.

Mr. Owens is currently imprisoned at FCI Allenwood-Medium. He suffers from and is being treated for hypertension and high blood pressure. He is obese, has an abdominal hernia, and does not have his left kidney. [ECF No. 56, at 3]. FCI Allenwood-Medium houses 1,024 total prisoners in White Deer, Pennsylvania. *FCI Allenwood-Medium*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/alm/ (last visited Oct. 16, 2020). As of

September 12, 2020, there were no active cases among prisoners and three active cases of COVID-19 among Allenwood-Medium staff. [ECF No. 57]. Since my denial of Mr. Owens's first motion, FCI Allenwood has suffered an outbreak of COVID-19 cases. When the Government filed its response, there were 78 active cases among inmates at FCI Allenwood. [ECF No. 62, at 4]. As of October 21, 2020, there are 17 active cases among prisoners and 11 active cases among Allenwood staff. *See COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Oct. 21, 2020).

## II. Discussion

The First Step Act "embodies Congress's intent to reduce the Bureau of Prison's authority over compassionate release petitions and authorizes the district courts to exercise their independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Galloway*, No. CR RDB-10-0775, 2020 WL 2571172, at *3 (D. Md. May 21, 2020) (internal citations removed); *see also United States v. Stephenson*, No. 3:05-CR-00511, 2020 WL 2566760, at *5 (S.D. Iowa May 21, 2020) ("Unqualified deference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's role.").

For me to reduce Mr. Owens's sentence under compassionate release, I must find that Mr. Owens has exhausted his administrative remedies, has demonstrated "extraordinary and compelling reasons," is not a danger to the safety of others, and find that his release is consistent with the § 3553(a) factors. *See e.g., United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020); U.S.S.G. § 1B1.13 (2018). As I will explain, to find "extraordinary and compelling reasons" exist by reason of COVID-19, Mr. Owens must demonstrate that he has a

medical condition listed by the Centers for Disease Control and Prevention ("CDC") as causing an increased risk of severe illness from COVID-19 and that he is at a facility which cannot effectively prevent the spread of the virus.

Moreover, when a court grants a sentence reduction, it "may impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). "In doing so, the court may modify an existing term of supervised release to add a period of home detention, only if it finds that home detention is a 'substitute for imprisonment.'" *United States v. Alvarado*, No. 18-CR-283 (NEB/TNL), 2020 WL 3041504, at *2 (D. Minn. May 27, 2020) (citing U.S.S.G. § 5F1.2; 18 U.S.C. § 3583(e)(2) (providing that the court may "extend a term of supervised release if less than the maximum authorized term was previously imposed" and "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release")); *United States v. Spencer*, No. 20-3721, 2020 WL 5498932, at *2 (6th Cir. 2020) ("if the district court reduces a defendant's sentence under § 3582(c)(1)(A) to time served, it can impose a term of supervised release equal to the unserved time and order, as a condition of that supervised release, that the defendant be confined to his home"). Furthermore, "reducing Defendant's sentence to time-served is consistent with the goals of sentencing and does not second-guess or relitigate this Court's original judgment." *United States v. Rodriguez*, No. 17-CR-157 (VEC), 2020 WL 3051443, at *4 (S.D.N.Y. June 8, 2020).

### a) Exhaustion of Administrative Remedies and Section 3582(c)(1)(A)

The First Step Act empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C § 3582(c)(1)(A)(i). But, before they make such requests, defendants must ask BOP to do so on their behalf

and then wait 30 days. *See* § 3582(c)(1)(A). Upon such a motion from BOP or from a defendant (after BOP denies the request or thirty days have elapsed since the request was filed), a court "may reduce the term of imprisonment…." 18 U.S.C. § 3582(c)(1)(A)(i).

On August 9, 2020 Mr. Owens filed a request for Compassionate Release with the warden at FCI Allenwood-Medium based on his medical conditions and the COVID-19 pandemic. [ECF No. 56, at 2]. The warden denied that request on August 17, 2020. [ECF No. 56, at 17–18]. Mr. Owens filed his Renewed Motion for Compassionate Release with the Court on October 6, 2020. Because Mr. Owens filed his request for compassionate release with the warden, and more than thirty days have passed, I find that he has exhausted his administrative remedies.

b) **Extraordinary and Compelling Reasons**

Once an inmate has satisfied administrative exhaustion, courts may reduce their sentences upon a finding of "extraordinary and compelling reasons." *See* 18 U.S.C. § 3582(c)(1)(A).

There are "disagreements [among district courts] about the precise definition of 'extraordinary and compelling reasons' justifying compassionate release."[1] *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717, at *3 (D.N.M. May 18, 2020). But many courts have found "extraordinary and compelling" reasons "supporting release on the basis of a combination of dire prison conditions and underlying health conditions that increase the likelihood of severe illness from

---

[1] The specific extraordinary and compelling reasons listed in the Sentencing Guidelines for BOP to consider include i) the defendant is suffering from a terminal or serious medical condition; ii) age of defendant; iii) family circumstances of defendant; and iv) "other reasons." U.S.S.G. § 1B1.13; *United States v. Bass*, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *3–4 (N.D.N.Y. May 27, 2020). "Following the passage of the First Step Act, courts may independently determine whether such 'other reasons' are present in a given case, without deference to the determination made by the BOP." *United States of America v. Thaher*, No. 17 CR. 302-3 (KPF), 2020 WL 3051334, at *4 (S.D.N.Y. June 8, 2020).

COVID-19."[2] *See e.g.*, *Bass*, 2020 WL 2831851, at *7 (citing *e.g.*, *Rodriguez*, 2020 WL 1627331, at *9 (finding an "extraordinary and compelling reason" on the basis of the inmate's diabetes, high blood pressure, and liver abnormalities, the outbreak at FCI Elkton, and the short period remaining on his sentence); *United States v. Sawicz*, No. 08-CR-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and conditions at FCI Danbury). I previously granted compassionate release to a defendant who was immunocompromised—suffering from a liver disease, Hepatitis C. *See United States v. White*, No. 2:17-CR-00198-4, 2020 WL 3244122, at *6 (S.D. W. Va. June 12, 2020); *see also Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 21, 2020) (listing "immunocompromised state" as an underlying medical condition causing an "increased risk for severe illness from COVID-19").

In addition, many courts rely upon CDC guidance for whether a medical condition constitutes an "extraordinary and compelling" reason for release. *See e.g.*, *United States v. Salvagno*, No. 5:02-CR-51 (LEK), 2020 WL 3410601, at *4 (N.D.N.Y. Apr. 23, 2020), reconsideration denied (June 22, 2020) ("The Centers for Disease Control and Prevention has advised that people with hypertension face an increased

---

[2] "Section 1B1.13 of the United States Sentencing Guidelines contains the only policy statement issued by the Sentencing Commission pertaining to compassionate release," "which has not been updated since the passage of the First Step Act. . . ." *See Bass*, 2020 WL 2831851, at *3; U.S.S.G. § 1B1.13.2 Thus, courts have taken this to mean that "there does not currently exist, for purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'" *See e.g., United States v. Brooker*, ---F.3d---, 2020 WL 5739712 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Redd*, No. 1:97-cr-00006-AJT, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020); *United States v. Brant*, No. 218CR20155TGBMKM1, 2020 WL 2850034, at *4 (E.D. Mich. June 2, 2020); *United States v. Brooks*, No. 07-CR-20047-JES-DGB, 2020 WL 2509107, at *3 (C.D. Ill. May 15, 2020).

risk of severe illness from COVID-19."); *United States v. Nygren*, No. 1:16-CR-00106-JAW, 2020 WL 4208926, at *12 (D. Me. July 22, 2020) ("Based on the medical records in this case and the CDC guidance . . . ."); *United States v. Bell*, No. 18-CR-60115-BB-4, 2020 WL 4217724, at *4 (S.D. Fla. July 23, 2020) ("CDC guidance indicates that individuals with the following health conditions are at a higher risk of contracting severe illness due to COVID-19 . . . ."). Many courts reject compassionate release petitions when the defendant does not suffer from any conditions recognized by CDC as causing an increased risk of severe illness from COVID-19. *See e.g.*, *United States v. Adeyemi*, No. CR 06-124, 2020 WL 3642478, at *19 (E.D. Pa. July 6, 2020) ("Mr. Adeyemi's asthma does not currently fit the Centers for Disease Control and Prevention's high-risk category."); *United States v. Mollica*, No. 2:14-CR-329-KOB, 2020 WL 2811504, at *3 (N.D. Ala. May 29, 2020) ("Ms. Mollica is under 65 and the CDC has not listed the underlying conditions from which she suffers as creating particular risk for COVID-19."); *United States v. Arroyo*, No. 2:19-CR-54-1-TLS-JPK, 2020 WL 3118787, at *4 (N.D. Ind. June 12, 2020) ("High cholesterol is not listed on the CDC website as a risk factor related to COVID-19 . . . ."); *United States v. Cosby*, No. 18CR4474-JAH, 2020 WL 3840567, at *4 (S.D. Cal. July 7, 2020) ("CDC has not listed epileptic seizures as a condition that places individuals at a higher risk of severe illness."); *United States v. Frazer*, No. CR 19-110, 2020 WL 2404893, at *2 (E.D. Pa. May 12, 2020) ("Sleep apnea is not listed by the CDC as a serious underlying medical condition that could increase a person's risk for severe illness from COVID-19.").

I have joined other courts in holding that I cannot find that "extraordinary and compelling" reasons exist to grant release because of COVID-19 unless the inmate has a condition that makes him or her more at risk for developing a serious illness

from COVID-19 *and* the facility where the inmate is housed has conditions such that its inmates are at a high risk of contracting COVID-19. *See United States v. Raia*, 954 F.3d 594, 594 (3d Cir. 2020) ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ."); *United States v. Penaloza*, No. 19-238, 2020 WL 1555064, at *2 (D. Md. Apr. 1, 2020) ("[T]he mere presence of the virus, even in the detention setting, does not translate to the release of a person accused.").

In deciding which conditions result in an inmate being a higher risk for COVID-19, I will defer to CDC's list of medical conditions causing an increased risk of severe illness from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 21, 2020). Using CDC guidance will allow for more predictable standards in deciding which defendants have "extraordinary and compelling" reasons justifying release.

If an inmate can demonstrate that he or she has a condition identified by CDC, next, the defendant must show that his or her prison conditions are such that BOP cannot effectively prevent the spread of COVID-19. Factors include but are not limited to the steps BOP has taken to stop the spread of COVID-19 in that particular prison and steps to follow CDC guidance, the ability of inmates to socially distance, the amount of hygiene products and face masks provided to inmates, and the number of COVID-19 cases in that prison.

Mr. Owens has alleged several health conditions that put him at a higher risk of serious illness from COVID-19. Mr. Owens is diabetic[3], hypertensive, obese, and

---

[3] Throughout the filings of both Mr. Owens and the Government, Mr. Owens is interchangeably referred to as diabetic and pre-diabetic. Because Mr. Owens suffers from other conditions on the CDC list putting him at an increased risk for serious illness should he contract COVID-19 and

suffers from reduced kidney function having had one of his kidneys removed. Diabetes Mellitus II and obesity have been characterized by the CDC as conditions that increase the risk of serious illness from COVID-19. Hypertension is on the list of conditions that CDC identifies may increase risk of serious illness from COVID-19. The Government agrees that Mr. Owens has these conditions and is an increased risk of seriously illness should he contract COVID-19. [ECF No. 62, at 18]. Having found that Mr. Owens suffers from health conditions that put him at an increased risk of serious illness should he contract COVID-19, I turn to whether the conditions at FCI Allenwood put Mr. Owens at a higher risk for contracting COVID-19.

The number of active cases at FCI Allenwood is not disputed. That number went from 0 to almost 80 in a matter of weeks. As of this week, the number of cases has hovered around 20 active cases among prisoners and more than 10 cases among staff.

In addition to the current outbreak, Mr. Owens points to five conditions at FCI Allenwood that put him and all other prisoners at FCI Allenwood at a higher risk of contracting COVID-19. Mr. Owens contends that "(1) in order to receive your medication in the morning and afternoon you have to go to medical health services [and at] all times 20 to 30 inmates waiting [sic] to get their daily medication;" (2) BOP has refused to provide inmate[s] hand sanitizer;" "(3) if you purchase commissary you are locked in a very small room with 25 to 30 inmate with no supervisor to enforce wearing the mask [sic];" "(4) when using the phone you are required to be in the same area 4 at a time 1 feet [sic] apart;" and (5) 20 to 30 people "jammed together to watch games." [ECF No. 59, at 4–5].

---

because the government has conceded that this is the case, I find that it is not necessary to investigate further into exact nature of Mr. Owens's diabetes.

The Government responds to Mr. Owens's concerns about congregating while receiving medication by noting that "when not on lockdown, inmates receiving medication are limited to groups of 15 at a time with markers placed on the floor of the waiting room to provide six feet of social distancing. Mask wearing is required during all medical service interactions." [ECF No. 62, at 5]. Hand sanitizer is withheld from prisoners because it contains alcohol, is flammable, and there is a "high risk of misuse", but BOP assures the court that prisoners have access to hand washing facilities. *Id.* at 16–17.

As for accessing the commissary and telephone, BOP offers that "groups of inmates accessing facilities such as showers, telephones, and commissary, are limited in number so that social distancing can be effectively maintained. For example, inmates visiting the commissary are limited to groups of 20 with markers placed on the floor to maintain six feet of social distancing between individuals. The waiting area outside the commissary also features floor markers separated at six-foot intervals. Mask wearing is required during commissary visits . . . ." *Id.* at 6. The Government raises further concerns that "barring inmates from telephones or watching television would be unreasonable." *Id.* at 17.

While the Government's explanations may explain why these conditions exist, they do not disagree with Mr. Owen's allegations. Considered most conservatively, at risk patients cannot access their medications without gathering in groups of 15, inmates have no access to hand sanitizer, inmates are gathered in larger groups in confined areas to get commissary, use telephones, or watch television. And when these groups are gathered, there is no enforcement of mask wearing. I am sympathetic to the Government's concern that enforcing compliance "would likely require a complete lock-down," but I remain unpersuaded, especially when FCI

Allenwoon is in the midst of an outbreak.

I find that the combination of Mr. Owens's health conditions, the inability of BOP to adequately enforce mask wearing and social distancing guidelines, and the current outbreak of COVID-19 cases at FCI-Allenwood to be extraordinary and compelling reasons justifying compassionate release for Mr. Owens. Having found that extraordinary and compelling reasons exist, I will turn to considering whether Mr. Owens is a danger to the community.

### c) Danger and Safety to the Community and Section 3553(a) Factors

The relevant policy statement under United States Sentencing Guideline § 1B1.13 requires that for a reduction in the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), a court must find that the "defendant is not a danger to the safety of others or the community" and consider the § 3553(a) factors. *Howard*, 2020 WL 2200855, at *2. Section 3142(g) sets out factors to help with the dangerousness assessment, including the following:

> (1) "the nature and circumstances of the offense charged;" (2) "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history;" and (3) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

*Bass*, 2020 WL 2831851, at *8 (quoting § 3142(g)).

In addition to considering whether Mr. Owens constitutes a danger to his community, I also consider the § 3553(a) factors. Title 18 Section 3553(a) requires that a sentence be "sufficient, but not greater than necessary, to . . . reflect the

seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." 18 U.S.C. § 3553(a).

Mr. Owens was convicted for participating in a conspiracy to distribute cocaine base. [4] [ECF No. 37]. In addition to the drugs, a firearm was possessed by Mr. Owens. Mr. Owens has an extensive criminal history. His numerous convictions for drug possession and distribution, flee and escape, unlawful possession of firearms, and even a charge for assault on an officer[5] led to the application of the career offender enhancement and ultimately a sentence of 130 months of incarceration. This sentence was later reduced to 110 months under a retroactive application of a reduction in the sentencing guidelines. [ECF No. 47].

Mr. Owens's list of previous convictions is extensive, and I must consider that when determining whether compassionate release would promote respect for the law and adequately punish Mr. Owens for his crimes. But those convictions, while certainly harmful to his community, were not crimes of violence.

The Government noted in its response that Mr. Owens has had several conduct violations while incarcerated. The record indicates that Mr. Owens has been punished for use of marijuana, introducing alcohol into confinement, and asking a fellow inmate to dial the phone for him when his phone privileges had been revoked. These infractions, while noteworthy, also do not indicate that Mr. Owens will be a

---

[4] 572.7 kg of marijuana was attributed to Mr. Owens's conspiracy. In 2013, marijuana was used in place of the converted drug weight used under the 2018 version of the sentencing manual.
[5] The record indicates that Mr. Owens's conviction for assault on an officer involved Mr. Owen's attempts to flee from a traffic stop, endangering the officer's life.

danger to anyone if released.

I do not seek to understate Mr. Owens's criminal history nor the harm he did to his community prior to being incarcerated. The distribution and selling of drugs is not a victimless crime. But in considering that Mr. Owens has been in federal prison for over 92 months of a 110 month sentence and has no violent convictions in his extensive history, I find that Mr. Owens will not be a danger to his community and that compassionate release at this point in Mr. Owens's term of imprisonment does not contradict the goals of the § 3553(a) factors. Release to home incarceration after an already lengthy term of imprisonment will reflect the seriousness of the offense, continue to promote respect for the law, and provide just punishment for the defendant's crimes. *See Campagna* 2020 WL 1489829 at *1 (finding home detention was a substitute for imprisonment satisfying the § 3553(a) factors). Because he will be on home incarceration and does not have a violent history, I further find that Mr. Owens will not pose a risk to others in the community if released.

### III. Conclusion

Defendant's Renewed Motion for Compassionate Release, [ECF Nos. 59, 61], is **GRANTED**. Defendant's Motion for Appointment of Counsel, [ECF No. 58], is **denied as moot**. Mr. Owens's sentence is **modified to TIME SERVED to be followed by a 51-month term of supervised release. Mr. Owens is to serve the first 15 months of his term of supervised release on home incarceration.** All previously imposed conditions of supervised release apply. During the period of home incarceration, Mr. Owens is restricted to a 24-hour-a day lock-down at his residence except for medical necessities, court appearances, and other activities specifically approved by the court. Mr. Owens is to be released following a 14-day quarantine period to be administered by BOP to mitigate the risk of Mr. Owens exposing others to COVID-19 upon his release. He has

informed the court that his address for home incarceration will be 3231 Merriweather St. NW Warren, Ohio 44484.

The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel; the United States Attorney; the United States Probation Office; and the United States Marshal; FCI Allenwood RT 15, 2 MI North of Allenwood, White Deer, Pennsylvania 17810; and Ms. Lena Davis, 3231 Merriweather St. NW Warren, Ohio 44484.

ENTER:	October 21, 2020

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE